United States District Court
Southern District of Texas
**ENTERED**
April 09, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
|  Plaintiff, | § | |
| | § | |
|  v. | § | **CRIMINAL NO. 2:18-756** |
| | § | |
| **FREDIS ARRAZOLA-RAUDALES** | § | |
| a/k/a **MARCO ARRASOLA-RAUDALES** | § | |
| a/k/a **JOSE ROBERTO-LOPEZ** | § | |
| a/k/a **FREDIE ARAZOLA,** | § | |
|  Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Fredis Arrazola-Raudales ("Defendant") stands charged with illegal reentry in violation of 8 U.S.C. § 1326. Pending before the Court is Defendant's Motion to Dismiss (D.E. 13), to which the United States of America (the "Government") has responded (D.E. 14).

**I. Background**

Defendant, a citizen of Honduras, was first placed in removal proceedings on February 15, 2005, and issued a Notice to Appear (NTA) before an immigration judge on "a date to be set at a time to be set." D.E. 13, Ex. 1.[1] That same day, Defendant executed a Notice of Rights and Request for Disposition wherein he gave up his right to a hearing before the immigration judge, admitted to being in the U.S. illegally, and requested to return to Honduras as soon as possible. D.E. 14, Ex. 1-A. On February 25, 2005, the immigration judge ordered Defendant removed. He did not appeal. He was removed from the U.S. on March 30, 2005, and has subsequent removals that all arose from the same 2005 order of removal. He was most recently deported on March 16, 2018, and was apprehended unlawfully within the U.S. on July 18, 2018, giving rise to the

---

1. The NTA was issued in the name of Marco Antonio Arrasola-Raudales, one of Defendant's aliases.

1

instant offense. He now moves to dismiss his current illegal reentry charge because the 2006 NTA he received did not include the time or date of his immigration hearing.

## II. *Pereira v. Sessions*[2]

A removal proceeding begins with the filing of a notice to appear (NTA) in immigration court. *Garcia-Perez v. Holder*, 558 F. App'x 343, 346 (5th Cir. 2013). Section 1229(a) of the Immigration and Nationality Act (INA) provides that an NTA must contain, among other information, the "time and place at which the [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). However, a separate Department of Justice regulation requires NTAs to contain time and place information only "where practicable." 8 C.F.R. § 1003.18(b). "If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.* Judging it impracticable to schedule a hearing at the outset of each removal proceeding, the Department of Homeland Security (DHS) "almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings." *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018). Instead, a typical NTA compels the noncitizen's appearance at "a place to be set," "a date to be set," and "a time to be set."

The Supreme Court recently addressed removal NTAs in *Pereira v. Sessions*, which originated not with an illegal-reentry indictment, but with an application for cancellation of removal. 138 S. Ct. at 2112. Cancellation of removal is a form of discretionary relief available to unauthorized aliens who have been continuously physically present in the United States for at least ten years. *See* 8 U.S.C. § 1229b(b)(1)(A). Under the so-called "stop-time rule," an alien's period of continuous residence is "deemed to end . . . when the alien is served a notice to appear under Section 1229(a)." *See* 8 U.S.C. § 1229b(d)(1). Pereira, a native and citizen of Brazil, had

---

2. This excellent summary of *Pereira* was adapted from Judge Diana Saldana's opinion in *United States v. Malagamba-DeLeon*, 5:18-CR-691, D.E. 27 at 2–4 (S.D. Tex. Dec. 4, 2018).

been physically present in the United States since 2000. *Pereira*, 138 S. Ct. at 2112. In 2006, he received an NTA that did not set a date or location for his removal hearing. *Id.* DHS mailed the subsequent time-and-place notice to the wrong address, and Pereira, who remained unaware of the hearing, was ordered removed in absentia in 2007. *Id.* In 2013, DHS reopened his earlier removal proceedings, and Pereira applied for cancellation of removal. *Id.* The immigration court held that Pereira was ineligible for cancellation because the 2006 NTA had triggered the stop-time rule, leaving Pereira with only six years of legally cognizable continuous residence. *Id.* Pereira argued that his 2006 NTA was invalid because it did not contain the time and place information required by the INA. *Id.* The Board of Immigration Appeals (BIA) and First Circuit sided with the Government. *Id.*

The question that eventually reached the Supreme Court was: "Does a notice to appear that does not specify the time and place at which the proceedings will be held, as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?" *Id.* at 2113 (internal quotation marks omitted). In other words, must an NTA contain time and place information in order to end an alien's period of continuous residency? The Supreme Court said yes, holding 8–1 that any NTA "that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a) and therefore does not trigger the stop-time rule." *Id.* at 2110 (internal quotation marks omitted).

### III. Motion to Dismiss

Defendant moves the Court to dismiss his indictment under *Pereira*, claiming the immigration court lacked subject matter jurisdiction to issue his original removal order in 2005 after the NTA he received failed to include a date and time for his immigration hearing. As such, Defendant argues that his 2005 removal, and all subsequent removals arising therefrom, were void and cannot form the basis for an indictment for illegal reentry, as he was never "removed"

as a matter of law. Defendant further argues that his removal violated due process and that he need not satisfy the factors set forth in 8 U.S.C. § 1326(d) to collaterally attack his removal.

The Government urges the Court to read *Pereira* narrowly and apply the definition of NTA in 8 C.F.R. § 1003.15, which does not require an NTA to include a date and time, as opposed to 8 U.S.C. § 1229(a)(1). The Government further argues that Defendant may not collaterally attack his prior removal without satisfying § 1326(d). Finally, the Government states that the validity of a prior removal order is not an element of an illegal reentry offense.

## IV. Analysis

Defendant's motion to dismiss involves two interrelated questions: (1) Does *Pereira* extend beyond the stop-time rule to illegal reentry prosecutions? (2) If it does, may Defendant collaterally attack his prior removal order without satisfying the factors set forth in § 1326(d)?

**A. Does Pereira extend beyond the stop-time rule to illegal reentry prosecutions?**

As a sister court in the Southern District of Texas recently recognized, courts are split regarding whether *Pereira* controls an illegal-reentry prosecution when the defendant's prior removal order was based on an incomplete NTA. *United States v. Lozano*, 2019 WL 224178, at *2, *10–*12 (S.D. Tex. Jan. 15, 2019) (collecting cases).

While the Fifth Circuit hasn't directly addressed this issue, its decision in *Mauricio-Benitez* suggests that *Periera* is limited to the stop-time rule. On June 13, 2004, Mauricio-Benitez entered the United States illegally. *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 146 (5th Cir. 2018). The same day, DHS personally served him with an NTA charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* The NTA ordered Mauricio-Benitez to appear at a removal hearing before an immigration judge at a date and time to be set. *Id.* The following month, DHS sent a Notice of Hearing (NOH) to Mauricio-Benitez at the address he had provided via regular mail, informing him that his removal hearing had been scheduled for September 21,

2004, and again warning him of the consequences of failing to appear. *Id.* After he failed to attend the hearing, the immigration judge entered an *in absentia* order for his removal. *Id.* Almost 13 years later, Mauricio-Benitez filed a motion to reopen his removal proceedings and rescind the *in absentia* removal order, alleging that he had never received notice of his removal hearing because the immigration officer had misspelled his address. *Id.* After the BIA refused to reopen his removal proceedings, Mauricio-Benitez appealed. *Id.* The Fifth Circuit denied his petition for review because he failed to provide the immigration court with his correct mailing address and because he failed to rebut the presumption of delivery of his NOH. *Id.*

In reaching this holding, the Fifth Circuit explicitly noted that the Supreme Court's *Pereira* decision "does not impact this conclusion," explaining:

> As the Supreme Court emphasized, "[t]he narrow question in [that] case" was whether a NTA that does not specify the time or place of the removal hearing triggers the "stop-time rule" for purposes of a cancellation of removal. [*Pereira*, 138 S.Ct.] at 2109–10; *see also id.* at 2113 ("[T]he dispositive question in this case is much narrower[.]"). But cancellation and reopening are two entirely different proceedings under immigration law with different standards of review. . . . Because the issues in this case pertain only to reopening, *Pereira*'s rule regarding cancellation is inapplicable.

*Mauricio-Benitez*, 908 F.3d at 148 n.1 (citing *Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1116–17 (S.D. Cal. 2018) (declining to apply *Pereira* more broadly than in stop-time rule cancellation cases); *United States v. Ibarra-Rodriguez*, 2018 WL 4608503, at *3 (W.D. Okla. Sept. 25, 2018) (distinguishing *Pereira* because "the 'stop-time rule' [was] not at issue" in the case)).

Faced with motions to dismiss illegal reentry indictments under *Pereira* based on incomplete NTAs, courts in the Southern District of Texas have recognized that "the Fifth Circuit has already noted that *Pereira* 'is to be narrowly read.'" *United States v. Lozano*, 2019 WL 224178, at *5 (S.D. Tex. Jan. 15, 2019) (Hanen, J.); *see also United States v. Malagamba-DeLeon*, Case No. 5:18-CR-691, D.E. 27 at 7–8 (S.D. Tex. Dec. 14, 2018) (Saldana, J.) ("[T]he

5

Fifth Circuit suggested without holding that *Pereira* is limited to the cancellation-of-removal context. . . . Thus, the Fifth Circuit's only invocation of *Pereira* to date appears to approve—though not yet adopt—a restrictive reading of the case."). However, courts in this District are nonetheless split on whether an incomplete NTA renders a removal order jurisdictionally defective.

> Relying on *Mauricio-Benitez*, the court in *Lozano* wrote:
>
> This Court cannot agree with that basic proposition [that the Supreme Court found that no jurisdiction exists if a specific time and place is not included on the initial NTA] because the Supreme Court never made such a holding. In fact, it is clear that the majority opinion was purposefully narrow. The word "jurisdiction" does not appear anywhere in the *Pereira* majority opinion. To read that requirement into the majority's opinion either assumes that the majority of the Supreme Court did not understand the significance of that term or that they were purposefully trying to hide the opinion's real meaning from the rest of the federal judiciary. This Court will not presume either. If the Supreme Court had wanted to reach this result it could have easily held that the failure to include the time and place of a hearing in the NTA is jurisdictional. It did not.
>
> ***
>
> If *Pereira* is inapplicable to a motion to reopen removal proceedings—which are factually and legally more similar to *Pereira*'s cancellation scenario than a 1326 illegal reentry prosecution—logic dictates *Pereira* does not control a criminal prosecution wherein the defendant not only had notice, but attended his removal proceeding.

*Lozano*, 2019 WL 224178, at *4–*5.

The court then distinguished NTAs filed with the immigration court versus those served upon aliens, and quoted approvingly at length from the Western District of Virginia's opinion in *Cortez*, which held that "neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction." *United States v. Cortez*, 2018 WL 6004689, at *3 (W.D. Vir. Nov. 15, 2018).

6

> "By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes [8 C.F.R. §§ 1003.13 and 1003.15], *Pereira* and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear 'given . . . to the alien' either in person, by mail, or by delivery to the alien's counsel. Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including '[t]he time and place at which the proceedings will be held.' 8 U.S.C. § 1229(a)(1)(G)(i). Neither § 1229(a)(1) nor *Pereira* address the immigration court's subject matter jurisdiction over the proceeding."

*Lozano*, 2019 WL 224178, at *6 (quoting *Cortez*, 2018 WL 6004689 at *3).

Finally, the court explained that due process is not violated where, unlike in *Pereira*, the alien had actual notice of the hearing:

> Obviously, a complete lack of notice, as occurred in *Pereira*, would trigger due process concerns. Due process requires notice and an opportunity to be heard. Each Defendant herein was afforded both. In fact, both Defendants requested expedited hearings and both knowingly waived their appeals. . . . "Notably, the Supreme Court [in *Pereira*] did not disturb the well-settled precedent that an original defective notice to appear may be cured by a subsequent notice of hearing."

*Lozano*, 2019 WL 224178 at *7 (quoting *United States v. Arreola-Zambrano*, No. CR-18-01391-001-PHX-OJH, D.E. 40 (D. Ariz. Nov. 16, 2018) and citing *Chambers v. Mukasey*, 520 F.3d 445 (5th Cir. 2008) (actual notice and appearance waived any challenge to the NTA)).

The court in *Malagamba-DeLeon*, however, was "skeptical that two separate and contradictory regulatory definitions of the NTA can continue to operate side by side simply because one regulation cites to the text of the INA and the other does not." *Malagamba-DeLeon* at 16. "More likely, Section 1229's language requiring NTAs to include time and place information governs all immigration regulations that mention NTAs, whether they cross-reference the statute or not." *Id.* "And if an NTA must contain time and place information in order to be valid for *any* purpose, then the jurisdictional regulation must yield to the statute, rendering all removal orders that rely on incomplete NTAs jurisdictionally defective." *Id.* at 16–17. The *Tzul* Court similarly chose to extend *Pereira*'s application beyond the stop-time rule to

7

illegal reentry prosecutions: "The text of both the regulation and the statute support [Defendant's] argument that § 1003.14(a) is exactly what it appears to be—a necessary trigger for the jurisdiction of an immigration court. . . . The Court finds that *Pereira*'s time-and-place requirement applies to the regulation vesting jurisdiction in an immigration court." *United States v. Tzul*, 2018 WL 6613348, at *5–*6 (S.D. Tex. Dec. 4, 2018) (Ellison, J.) (internal citations omitted).

**B. May a defendant collaterally attack a prior removal order under *Pereira* in an illegal reentry prosecution without satisfying § 1326(d)?**

Section 1326(d) provides that an alien charged with illegal reentry may not challenge the validity of the underlying removal order unless he or she demonstrates that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

A § 1326 defendant challenging his or her prior removal order must prove all three prongs to prevail. *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015). "If the alien fails to establish one prong of the three part test, the Court need not consider the others." *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003). The Fifth Circuit further requires the defendant to demonstrate that the underlying removal proceedings caused "actual prejudice." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999). "Actual prejudice" means "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id*. at 659.

Three of the four courts in the Southern District of Texas to consider the issue have held that a defendant in an illegal reentry prosecution must satisfy § 1326(d) in order to collaterally attack the underlying removal order, even where the basis for the defendant's challenge is that the immigration court lacked subject matter jurisdiction to issue the removal order based on an incomplete NTA.

The *Lozano* decision found that, assuming *Pereira* extended to illegal reentry cases, "at best, [the defendants'] argument supports the conclusion that their removals were voidable, not void." *Lozano*, 2019 WL 224178, at *9. In order to void those orders in their § 1326 prosecutions, each defendant was still required to "demonstrate that he/she: 1) exhausted his/her administrative remedies; 2) was improperly deprived of judicial review; and 3) the entry of the removal order was fundamentally unfair." *Id.* at *7 (citing *Cordova-Soto*, 804 F.3d at 719). Even if their prior removal orders were invalid under *Pereira*, the defendants could not collaterally attack those orders in their illegal reentry prosecutions because they failed to comply with any of the three prongs of § 1326(d). *Id.* at *8–*10 (citing *United States v. Zapata-Cortinas*, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018)) ("Having considered both lines of arguments and the numerous decisions that have come out in the period since *Pereira*, the Court concludes that (i) a removal order that suffers jurisdictional defects may serve as the basis for a § 1326(a) prosecution, and (ii) a § 1326 defendant must satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order.")).

The court in *Malagamba-DeLeon* similarly concluded that, assuming the defendant's claim that the immigration court lacked jurisdiction to enter the removal order was correct, he was not entitled to relief because he had not met the requirements of § 1326(d): "The fact that Defendant chose 'not to make the attempt' to access an administrative or judicial appeals tribunal

9

'does not mean that he was deprived of . . . judicial review.'" *Malagamba-DeLeon* at 20 (quoting *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003)).

The court in *Escobar-Espinosa* did not apply the *Pereira* decision at all when addressing the defendant's motion to dismiss an illegal reentry charge for lack of a valid NTA, but instead denied the defendant's motion solely because he failed to satisfy § 1326(d). *United States v. Escobar-Espinosa*, 1:18-CR-842, D.E. 23 (S.D. Tex. Dec. 4, 2018) (Rodriguez, Jr., J). The court held, "The fact that Mr. Escobar grounds his challenge on the argument that the Immigration Court lacked subject matter jurisdiction does not trigger a distinct analysis: § 1326(d) still controls. Mr. Escobar does not provide any authority supporting his contention that the absence of subject matter jurisdiction affords him an avenue apart from § 1326(d) to collaterally attack the removal order." *Id.* at 2 (citing *United States v. Mendoza*, 481 U.S. 828 (1987)).

Only one decision in this District has held that a jurisdictional challenge to a prior removal order under *Pereira* is not barred by § 1326(d). The *Tzul* Court held that the defendant's prior removal order was not merely voidable, but was "issued *ultra vires* and is void. . . . As the 2009 removal order was invalid, the government cannot meet its burden to prove an element of the offense, and the indictment should be dismissed." *Tzul*, 2018 WL 6613348 at *6 (internal citations omitted).

Finally, the Court recognizes that several cases from the Western District of Texas have held that *Pereira* bars an illegal-reentry prosecution when the defendant's prior removal order was based on an incomplete NTA. *See United States v. Vargas-Osorio*, 2018 WL 6201957 (W.D. Tex. Nov 28, 2018); *United States v. Pedroza-Rocha*, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018); *United States v. Leon-Gonzalez*, No. 3:18-CR-2593, D.E. 32 (W.D. Tex. Nov. 20, 2018); *United States v. Lopez-Urgel*, No. 1:18-CR-0310-RP, D.E. 30 (W.D. Tex. Nov. 14, 2018); *United States v. Alfredo Valladares*, No. 1:17-CR-156-SS, D.E. 44 (W.D. Tex. Oct. 30,

2018). However, while these cases "have carved out an exception to Section 1326(d) for illegal-reentry cases predicated on defective NTAs" and held that "neither actual notice nor the defendant's appearance at his removal hearing can cure this fundamental defect[,] . . . there are signs that the Western District of Texas may be reversing course." *Malagamba-DeLeon* at 13 (citing *United States v. Hernandez-Lopez*, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018); *United States v. Sandoval-Cordero*, 2018 WL 6253251 (W.D. Tex. Nov. 29, 2018)). "Chief Judge Garcia is now of the opinion that 'even if [a] Defendant's prior Removal Order may have been invalid due to the deficient NTA . . . [the] Defendant may only challenge the validity of the prior Removal Order . . . if he can satisfy the high bar set forth in § 1326(d).'" *Malagamba-DeLeon* at 14 (quoting *United States v. Zapata-Cortinas*, 2018 WL 6061076, at *7 (W.D. Tex. Nov. 20, 2018)). "Thus, although several other Western District cases dismissing illegal-reentry indictments remain standing, Chief Judge Garcia's reversal may signal a shift in the District's reading of *Pereira*." *Id.*

### C. Is Defendant entitled to dismissal of his illegal reentry indictment?

Having carefully considered the numerous decisions cited *supra*, the Court finds *Lozano* to be persuasive and adopts the reasoning therein. The Court holds that *Pereira* does not extend to an illegal reentry prosecution wherein the defendant not only had notice, but either attended or waived his immigration hearing. Moreover, even assuming a defendant's prior removal order were voidable under *Pereira* because the initial NTA failed to include the time, date, and/or location of the immigration hearing, a § 1326 defendant must nonetheless satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order.

Here, there is no question that the NTA issued to Defendant in 2005 did not include the date and time of his immigration hearing. There is also no question that he waived his right to an immigration hearing and admitted that he was subject to being a non-citizen present in the U.S.

11

without being admitted or paroled. Defendant has offered no evidence that he exhausted his administrative remedies, was improperly deprived of judicial review, or that the entry of the removal order was fundamentally unfair. Thus, he cannot collaterally attack his prior removal in this illegal reentry prosecution.

**V. Conclusion**

For the reasons stated herein, Defendant's Motion to Dismiss (D.E. 13) is **DENIED**.

It is so **ORDERED** this 2nd day of April, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE